UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN ROBBINS, | ) NO. CV 17-0246-AG(E) |
| Plaintiff, | ) |
| v. | ) ORDER DISMISSING FIRST AMENDED |
| LT. J. CORTEZ, et al., | ) COMPLAINT WITH LEAVE TO AMEND |
| Defendants. | ) |

For the reasons discussed below, the First Amended Complaint is dismissed with leave to amend. See 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)(2).

**PROCEEDINGS**

Plaintiff, a state prisoner proceeding in forma pauperis, brings this civil rights action pursuant to 42 U.S.C. section 1983 against prison officials at the California Men's Colony ("CMC"). The original Complaint named as Defendants: (1) CMC Warden E. Valenzuela; (2) Correctional Lieutenant J. Cortez; (3) Correctional Officers C.

Sandoval, R. Day, J. Ramirez, J. Busby, E. Clemons; and (4) fictitious "Doe" Defendants. The original Complaint sued Defendants in their individual capacities.

On May 19, 2017, the Court issued an "Order Dismissing Complaint With Leave to Amend." On June 22, 2017, Plaintiff filed a First Amended Complaint. The First Amended Complaint adds the following Defendants: (1) Correctional Officer R. Castillo; (2) Registered Nurse Jackie Groenveld; (3) Chief Physician and Surgeon Dr. C. Barber; (4) Dr. Duncan; and (5) Chief Medical Executive Dr. D. Ralston. The First Amended Complaint names Defendants Barber, Duncan and Ralston in their individual capacities only. Plaintiff sues the remaining Defendants in both their individual capacities and their official capacities.

**SUMMARY OF PLAINTIFF'S ALLEGATIONS**

**I. <u>The Original Complaint</u>**

In the original Complaint, Plaintiff alleged that, on November 18, 2013, Plaintiff assertedly was issued a Rules Violation Report charging Plaintiff with delaying a peace officer in the performance of duties (Complaint, p. 5). Plaintiff asserted Eighth Amendment claims arising out of events allegedly occurring during an ensuing December 20, 2013 administrative hearing (<u>id.</u>). Defendant Cortez reportedly presided over this hearing as the Senior Hearing Officer (<u>id.</u>).

///

During the hearing, Plaintiff allegedly began to feel pain from sitting handcuffed in a chair and assertedly adjusted himself in an attempt to become more comfortable (id., p. 11). Defendant Sandoval allegedly placed a hand on Plaintiff's shoulders and whispered, "If you move one more time, I'll take your fucking ass to the ground" (id.).

When Defendant Cortez allegedly inquired whether Plaintiff was read to proceed, Plaintiff assertedly requested permission to return to Plaintiff's cell to retrieve some allegedly pertinent documents (id.). Cortez reportedly denied the request, saying, "You should have brought those things with you." Plaintiff allegedly responded that the escorting officers, Defendants Sandoval and Day, assertedly had not allowed Plaintiff to retrieve the papers from his cell (id.). Cortez allegedly said, "I've seen your name on numerous 602's (inmate grievance) [sic], you're a litigator, this will teach you not to file so many 602's, so on that basis I will deny that request" (id.).

Plaintiff allegedly again adjusted himself in his chair because of pain, and assertedly told Cortez, "You are violating my due process rights and I'm going to 602 you with a staff misconduct complaint" (id., p. 12). Defendant Cortez then allegedly said to his officers, "Restrain him" (id.).

Defendants Sandoval and Day allegedly grabbed Plaintiff, and one of them assertedly ordered a "Code One" (id.). Defendant Busby allegedly responded to the "Code One" and ordered Plaintiff placed in leg restraints (id.). Defendant Clemons allegedly stepped on the leg

3

restraints after the restraints had been secured tightly, assertedly inflicting excruciating pain on Plaintiff (id.). Clemons allegedly twisted Plaintiff's wrists upward in a reverse wrist lock position to the point "where it was unbareable [sic]" (id.).

After Plaintiff allegedly exited the hearing office to be returned to his cell, Defendant Day assertedly held Plaintiff in a "tight reverse wrist lock," allegedly twisting Plaintiff's right middle finger and telling Plaintiff, "If you even move in the slightest, I'll take your ass down" (id.). Day allegedly applied more pressure until Plaintiff assertedly yelled out in pain (id.). Day allegedly continued to apply pressure to Plaintiff's finger until the finger reportedly "snapped" (id.). When Plaintiff assertedly flinched and yelled out in pain, Day allegedly yelled, "He's trying to grab me!" (id., p. 13). Defendants Day, Sandoval, Ramirez, Clemons, Busby and "approximately one to five unknown officers" named as "Doe" Defendants then allegedly tackled Plaintiff (id.). These Defendants allegedly kicked and beat Plaintiff, assertedly punching Plaintiff in the face, torso and extremities (id.). Defendant Day allegedly choked Plaintiff until Plaintiff was unable to breathe (id.). During this time, Plaintiff allegedly heard and felt his neck "pop," and Plaintiff assertedly experienced severe consequent pain (id.). Throughout the alleged beating and choking, Plaintiff reportedly was still wearing leg and arm restraints (id.).

Plaintiff allegedly suffered injuries to his neck, ribs, chest, wrists and ankles, as well as emotional and psychological injuries (id., p. 14). Medical personnel identified as "Doe" Defendants

allegedly did not provide immediate medical care to Plaintiff, purportedly by failing to summon Plaintiff to receive those services despite supposedly having knowledge of Plaintiff's need for medical care (id.).

The original Complaint contained two claims for relief. Claim One asserted that Defendants subjected Plaintiff to "cruel and unusual punishment by means of unnecessary use of force without due process," assertedly in violation of the First, Eighth and Fourteenth Amendments (id., p. 5). Claim Two alleged that various "Doe" Defendants assertedly denied Plaintiff medical care by purportedly exhibiting deliberate indifference to an allegedly serious medical need (id., p. 14). Plaintiff sought declaratory relief, compensatory and punitive damages, the costs of suit and attorney's fees (Complaint, p. 6).

**II. The First Amended Complaint**

The First Amended Complaint is not a model of clarity. The pleading contains a due process claim (Claim I) and an Eighth Amendment claim (Claim II), but also contains what appear to be allegations of retaliation.

Plaintiff alleges that he was outside in the yard when Defendant Sandoval assertedly told Plaintiff that Sandoval and Plaintiff were going to a disciplinary hearing (First Amended Complaint, p. 7). Plaintiff allegedly asked Sandoval if Plaintiff could stop at his cell to retrieve documents pertinent to Plaintiff's defense, including witness contact information and statements from other correctional

5

officers who allegedly witnessed the event giving rise to the
disciplinary hearing (id.). Sandoval allegedly said yes and cuffed
Plaintiff's hands behind Plaintiff's back (id., pp. 7, 12).

However, Sandoval allegedly lied and did not take Plaintiff back
to Plaintiff's cell prior to the disciplinary hearing (id., p. 12).
Plaintiff asserts that Sandoval and his co-workers allegedly retaliate
against inmates like Petitioner "who have documented everything, kept
records, and [sic] appeal policies and procedures" (id.).

The hearing officer, Defendant Cortez, allegedly denied
Plaintiff's request to retrieve the documents from Plaintiff's cell
(id.). Defendants Sandoval and Cortez allegedly acted as part of a
larger group of correctional officials who assertedly confine inmates
in administrative segregation without a fair hearing on "bogus"
charges of "delaying a peace officer in the performance of his duties"
(id., pp. 12-13).

Plaintiff assertedly asked to be taken back to the yard because
he allegedly did not want to participate in a purportedly
unconstitutional "mock" hearing (id., p. 13). Defendants Sandoval and
Cortez allegedly refused this request (id.). Plaintiff, still
allegedly handcuffed behind his back, assertedly said he would not
respond to any of the hearing proceedings (id.).

Although Plaintiff purportedly posed no threat, Defendant
Sandoval allegedly then became violent, reportedly pushing down on
Plaintiff's shoulders and shoving Plaintiff against the back of the

chair (id., p. 14).  Cortez allegedly told Sandoval to restrain Plaintiff (id.).  Sandoval allegedly called for backup (id.).

Several guards allegedly responded, including Defendants Day, Clemons, Ramirez, Castillo and Busby (id., pp 14-15).  A correctional officer with an "M.I.A." neck tattoo threatened to "stomp [Plaintiff] out" if Plaintiff tried anything (id., pp. 14-15).  Plaintiff allegedly told this guard to stop trying to put Plaintiff's right hand in a wrist lock because Plaintiff's middle finger purportedly was broken (id., p. 15).

Defendants Cortez and Sandoval allegedly issued a "code 1 emergency, officer in trouble" (id.).  A "MOB" of correctional officials allegedly attacked Plaintiff, grabbling, pushing, twisting, hitting and shoving Plaintiff (id.).  Sandoval allegedly twisted Plaintiff's arms to the breaking point (id.).  Although allegedly fearing for his life, Plaintiff assertedly remained calm and did not resist (id.).  During the incident, Plaintiff's arms allegedly were handcuffed behind his back (id., pp. 15-16).  Defendant Cortez allegedly watched while the officers "brutally attacked" Plaintiff (id.).

Defendant Busby allegedly ordered Plaintiff to be placed in leg shackles (id.).  Defendant Clemons allegedly attached the leg shackles (id.).  Defendant Clemons reportedly complied with Plaintiff's request to remove Clemons' foot from the chain, which assertedly was pulling down on both shackles and injuring Plaintiff's ankles (id.).  Defendant Day assertedly kept trying to twist Plaintiff's right wrist

and fingers, although Day allegedly knew Plaintiff had a splint on Plaintiff's broken finger (id.).

Defendant Busby and other unidentified officers allegedly took Plaintiff back to his cell (id., p. 17). Plaintiff allegedly overheard Busby coaching all of the officers involved in the incident regarding what to write in incident reports, purportedly as part of a conspiracy by a "retaliatory gang" of administrative segregation officers (id.).

On the way back to Plaintiff's cell, Defendant Day allegedly violently moved Plaintiff's wrist to an uncomfortable position (id.). When Plaintiff allegedly asked Day to stop, saying Day was hurting Plaintiff, Day laughed and began working Plaintiff's hand and wrist "to and fro" (id., pp. 18-19). Day allegedly grabbed Plaintiff's splinted finger (id., p. 19). Plaintiff allegedly felt a "pop" and screamed that Day was breaking Plaintiff's finger (id.). Day allegedly yelled "he's grabbing me, he's grabbing me," which purportedly was "nearly impossible" because Plaintiff was handcuffed behind his back with officers holding Plaintiff's arms (id.). Defendant Busby allegedly watched this purported incident and did nothing (id.). Day allegedly shoved Plaintiff into the side of the hallway, and the officers and Plaintiff purportedly "careen[ed] down the hallway" and fell down (id.). Someone allegedly called for help (id.).

The officers allegedly kicked and hit Plaintiff while Plaintiff assertedly lay on the ground, cuffed and shackled (id., p. 20).

Officers allegedly punched Plaintiff and stood on Plaintiff's head (id., p. 21). Defendant Ramirez allegedly stepped on Plaintiff's neck with his or her full weight (id., p. 20). An unidentified officer purportedly took hold of Plaintiff's leg chains so that Plaintiff's legs assertedly were five feet in the air (id.). Plaintiff allegedly heard a "crunching, popping" noise in his neck (id.). Plaintiff's neck and finger assertedly are now permanently damaged (id.).

Plaintiff allegedly woke the next morning in so much pain that he reportedly could not even sit up (id., p. 21). Plaintiff assertedly asked an unidentified nurse for help but the nurse allegedly only gave Plaintiff medical request slips, which Plaintiff assertedly filled out (id.). Unidentified guards allegedly so intimidated Defendant Groenveld that she purportedly tried to refuse Plaintiff access to medical treatment (id.). Unidentified prison officials assertedly deprived Plaintiff of emergency medical treatment, although they reportedly knew the guards allegedly had beaten Plaintiff (id.).

On January 1, 2014, Defendant Duncan allegedly examined Plaintiff's injuries and ordered x-rays of Plaintiff's finger, neck and back (id., p. 22). However, Duncan allegedly refused to provide Plaintiff any pain medication (id.). Plaintiff allegedly thereafter received treatment from other doctors (id.). Defendants Barber and Ralston allegedly denied Plaintiff's grievance (id.). Upon Plaintiff's transfer to a different prison, prison doctors reportedly approved surgery on Plaintiff's hand (id.).
///
///

Defendants Valenzuela, Cortez and Busby allegedly acted pursuant to a purported practice and policy of preventing inmates from defending themselves at disciplinary hearings (id., p. 24). These three Defendants allegedly are aware of due process violations and order their subordinates to inflict suffering on inmates (id., pp. 24-25).

Plaintiff seeks declaratory and injunctive relief and compensatory and punitive damages (id., p. 26).

**DISCUSSION**

The Court must construe Plaintiff's official capacity claims against state correctional officials and state medical personnel as claims against the State of California. See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). "[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. This jurisdictional bar applies regardless of the nature of the relief sought." Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 100 (1984); see Atascadero State Hosp. v. Scanlon, 473 U.S. 234 (1985); Confederated Tribes & Bands of Yakama Indian Nation v. Locke, 176 F.3d 467, 469 (9th Cir. 1999). Section 1983 does not abrogate Eleventh Amendment immunity. See Quern v. Jordan, 440 U.S. 332, 344-45 (1979). California has not waived its Eleventh Amendment immunity with respect to section 1983 claims. Brown v. Calif. Dep't of Corrections, 554 F.3d 747, 752 (9th Cir. 2009); Dittman v. State of California, 191 F.3d 1020, 1025 (9th Cir. 1999), cert. denied, 530

U.S. 1261 (2000). Accordingly, the Eleventh Amendment bars Plaintiff's official capacity claims. See Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989); Romano v. Bible, 169 F.3d 1182, 1185 (9th Cir.), cert. denied, 528 U.S. 816 (1999); Bair v. Krug, 853 F.2d 672, 675-76 (9th Cir. 1998).

As the Court previously advised, Plaintiff may not sue the Warden or any other supervisor under section 1983 on a theory of respondeat superior. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates on a theory of *respondeat superior*"). A supervisor "is only liable for his or her own misconduct," and is not "accountable for the misdeeds of [his or her] agents." Id. at 677. Mere knowledge of a subordinate's alleged misconduct is insufficient. Id.

A supervisor may be held liable in his or her individual capacity "for [his or her] own culpable action or inaction in the training, supervision or control of [his or her] subordinates." Watkins v. City of Oakland, Cal., 145 F.3d 1087, 1093 (9th Cir. 1998) (quoting Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991)). To state a claim against any individual defendant, a plaintiff must allege facts showing that the individual defendant participated in or directed the alleged violation, or knew of the violation and failed to act to prevent it. See Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998), cert. denied, 525 U.S. 1154 (1999) ("A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights.").

Plaintiff's conclusory allegations against Warden Valenzuela do not suffice under these standards. See Ashcroft v. Iqbal, 556 U.S. at 678, 686 (plaintiff must allege more than an "unadorned, the-defendant-unlawfully-harmed me accusation"; a pleading that "offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do") (citations and quotations omitted).

As the Court previously advised Plaintiff, prison officials can violate the Constitution with respect to the medical treatment of a prisoner only if they are "deliberately indifferent" to an inmate's serious medical needs. See Farmer v. Brennan, 511 U.S. 825, 834 (1994); Estelle v. Gamble, 429 U.S. 97, 104 (1976). To be liable for "deliberate indifference," a jail official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment." Id. at 838. Allegations of negligence do not suffice. Estelle v. Gamble, 429 U.S. at 105-06; Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc). Thus, inadequate treatment due to accident, mistake, inadvertence, or even gross negligence does not amount to a constitutional violation. Estelle v. Gamble, 429 U.S. at 105-06; Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment." Farmer v. Brennan, 511 U.S. at 838.

Plaintiff's Eighth Amendment claims against Defendants Barber and Ralston are unclear. Plaintiff alleges only that these Defendants denied Petitioner's grievance, but Plaintiff does not allege the contents of the grievance or how the alleged denial of a grievance constituted deliberate indifference to any serious medical need of Plaintiff. Also unclear is Plaintiff's claim against Defendant Groenveld. Plaintiff generally alleges that Groenveld denied Plaintiff access to medical treatment, but does not allege specific facts showing Groenveld's alleged deliberate indifference to any serious medical need of Plaintiff. Plaintiff's conclusory allegations are insufficient. See Ashcroft v. Iqbal, 556 U.S. at 678, 686 (2009); Shelton v. Chorley, 487 Fed. App'x 388, 389 (9th Cir. 2012) (conclusory allegations of deliberate indifference to medical needs insufficient).

Although the First Amended Complaint does not contain any express claim of alleged retaliation, some of Plaintiff's allegations suggest Plaintiff may be attempting to assert a retaliation claim. Correctional officials may not retaliate against inmates who exercise their First Amendment rights. See Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997), cert. denied, 524 U.S. 936 (1998) (prisoners may base retaliation claims "on harms that would not raise due process concerns"). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment

rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d at 567-68 (citations and footnote omitted). Plaintiff's confused and conclusory allegations of alleged retaliation are insufficient to state a cognizable retaliation claim. See Nichols v. Medina, 649 Fed. App'x 493 (2016) (affirming dismissal of conclusory retaliation claim); see also Ashcroft v. Iqbal, 556 U.S. at 678.

To the extent Plaintiff attempts to assert the rights of other inmates, Plaintiff may not do so in this action. A pro se plaintiff may not represent anyone other than himself or herself. See Campbell v. Burt, 141 F.3d 927, 931 (9th Cir. 1998); Johns v. County of San Diego, 114 F.3d 874, 876 (9th Cir. 1997).

Finally, because Plaintiff has been transferred away from CMC, Plaintiff's claims for injunctive and declaratory relief are moot. See Alvarez v. Hill, 667 F.3d 1061, 1064 (9th Cir. 2012); Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir. 1995).

**CONCLUSION AND ORDER**

The First Amended Complaint is dismissed with leave to amend. If Plaintiff still wishes to pursue this action, he is granted thirty (30) days from the date of this Order within which to file a Second Amended Complaint. While the Court does not necessarily deem insufficient all of Plaintiff's allegations, the Court does require that any Second Amended Complaint be complete in itself and not refer in any manner to the prior Complaint. Plaintiff may not add

Defendants without leave of court.  See Fed. R. Civ. P. 21.  Failure to file timely a Second Amended Complaint may result in the dismissal of this action.

DATED: July 30, 2017.

_____
ANDREW J. GUILFORD
UNITED STATES DISTRICT JUDGE

PRESENTED this 27th day of June, 2017, by:

       /s/
_____
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE